CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
SEP 14 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JERRY R. OAKS,<br>Plaintiff, | ) Civil Action No. 7:11-cv-00041<br>)<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| DR. PANE, et al.,<br>Defendants. | ) By: Hon. Jackson L. Kiser<br>) Senior United States District Judge |

Jerry R. Oaks, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and with jurisdiction vested in 28 U.S.C. § 1331. Plaintiff names Dr. Payne[1], a former facility physician at the United States Penitentiary in Lee County, Virginia ("USP Lee"), and Karen Lambright, USP Lee's Health Services Administrator. Lambright filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant Lambright's motion for summary judgment and dismiss without prejudice the claims against Dr. Payne.

I.

On October 7, 2009, at around 11 a.m., Oaks felt extremely sharp pains in his stomach and groin. Oaks arrived at USP Lee's Health Services Department between 11:30 a.m. and 12:30 p.m. complaining of pain in his right testicle. (Compl. 6; Lambright Aff. (Def.'s Br. Supp. Mot. Summ. J. (no. 17)) ¶ 5; Medical R. ("M.R.") (no. 17-2) 2.) A nurse practitioner evaluated plaintiff, noted mild swelling in his right scrotal area, and recommended an emergency room consultation to rule out testicular torsion. Dr. Payne then examined plaintiff, determined that his

---

[1] Although plaintiff calls her Dr. Pane, her correct name is Dr. Payne. She is the physician with whom USP Lee contracted to provide medical services to its inmates.

symptoms were consistent with epididymitis,[2] which is inflammation commonly caused by infection, and intended on prescribing him ibuprofen and antibiotics. Plaintiff asked Dr. Payne to reconsider her diagnosis because he did not agree with it. Due to differing opinions from the nurse practitioner and Dr. Payne, Health Services Administrator Lambright was contacted.[3] After consulting with medical staff, she and other medical staff decided to send Oaks to a hospital for further evaluation.

Oaks was moved to a medical holding cell while arrangements were made to transport him to the hospital.[4] Oaks left USP Lee for the hospital at 2:47 p.m. and was admitted at 3:44 p.m. An ultrasound performed after his arrival showed a lack of blood supply to his right testicle, which required surgery. Oaks immediately underwent an operation that resulted in the necessary removal of his right testicle. Plaintiff returned to USP Lee three days later on October 10, 2009.

Plaintiff alleges that the defendants were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment.[5] (Compl ¶ 1.) Plaintiff wrote "Bivens Action [403 U.S. 388 (1971)]" on the first page of his Complaint, and he reiterates in his response to Lambright's motion that "this is not a medical negligence claim but a deliberate indifference to serious and urgent medical needs claim[.]" (Pl.'s Resp. (no. 25) 7.) Plaintiff requests as relief up

---

[2] Plaintiff describes epididymitis as "intermittent or recurring swelling and pain in the epididymis, the structure that surrounds the testicle." (Pl.'s Resp. to Def.'s Mot. Summ. J. (no. 25) 8 (citing Anderson v. United States, 1996 U.S. LEXIS 12722 (D. Del. 1996).)
[3] The Health Services Administrator is an administrative position. Lambright did not personally treat Oaks. Instead, she relies on medical professionals, like the nurse practitioner and Dr. Payne to diagnose and treat inmates.
[4] Lambright avers that this procedure is a common precaution to minimize security risks when an inmate knows he is leaving the prison, to allow medical staff easier access to him, and to reduce the time needed to safely escort him out of that high-security correctional facility.
[5] Plaintiff included with his Complaint a letter denying plaintiff's administrative remedies pursuant to the Federal Tort Claims Act ("FTCA"). The letter notes that he could not pursue a remedy to the alleged Eighth Amendment

to $500,000 in damages.

II.

A.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky.

---

violation via the FTCA, citing in support FDIC v. Meyer, 114 S. Ct. 996 (1994).

Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). Moreover, a plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084), available at 2008 WL 238562, at *6, 2008 U.S. App. LEXIS 1916, at *18-20 (noting that other circuits similarly prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted Gilmour).

B.   PLAINTIFF FAILED TO EXHAUST HIS AVAILABLE ADMINISTRATIVE REMEDIES.

Lambright argues that plaintiff failed to exhaust his administrative remedies for his present claims. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [Bivens] . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life[,]" Porter v. Nussle, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). Letters or communications filed outside the grievance procedures do not constitute exhaustion. See Sloan v. United States, No. 3:01cv347, 2002 WL 32502088 at *3 (E.D. Va. July 10, 2002), aff'd 63 F. App'x 174 (4th Cir. 2003). An inmate's failure to exhaust is an affirmative defense and the burden is on the defendant to prove the failure to exhaust. Jones v. Bock, 549 U.S. 199, 216 (2007).

To fully exhaust a Bivens claim, a federal prisoner must properly raise his grievance through all levels of the BOP's Administrative Remedy Program.[6] See 28 C.F.R. §§ 542.10, et

---

[6] FTCA claim exhaustion is different. Claimants seeking to bring an action under the FTCA against the United States for money damages must first present the claim to the appropriate agency and have the claim finally denied by the agency. See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993) (finding that pro se litigants are bound by the requirement of filing an initial claim to appropriate agency).

seq. If unable to resolve his complaint informally, an inmate may file a formal written complaint on form BP-9 within twenty calendar days of the complained act. Id. § 542.14(a). If not satisfied with a warden's response, the inmate may file an appeal on form BP-10 to a Regional Director within twenty calendar days of a warden's response. Id. § 542.15(a). An inmate who is not satisfied with a Regional Director's response may file a final administrative appeal of a regional director's response on form BP-11 to the BOP's General Counsel within thirty calendar days. Inmates have not exhausted administrative remedies until they have presented their grievance to all levels. Id.

Lambright avers that, after reviewing plaintiff's grievance record, plaintiff did not file the required grievance forms and, therefore, did not exhaust administrative remedies. Plaintiff states in response that he filed a BP-8 and BP-9 but his staff counselor never returned the documents to him. Plaintiff also states that Lambright told him he only needed a FTCA grievance form. In support, plaintiff attached Lambright's email dated February 2010 directing staff to tell plaintiff "that a BP-8 is not the appropriate format to seek monetary compensation."

Plaintiff did not exhaust his administrative remedies because he admits he only filed a BP-8 and a BP-9, which does not include an appeal to a Regional Director or to the BOP's General Counsel. See 28 C.F.R. § 542.14 (describing BP-9); § 542.15 (describing BP-10 and BP-11 as necessary appeals). Plaintiff's allegation that he did not receive a response to his BP-8 and BP-9 does not make the grievance process unavailable. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id. § 542.18. The lack of a response within the time-limits constituted a denial of the grievance. Thus, plaintiff could have continued the

administrative review process, but he fails to allege that he ever filed an appeal of those denials. Without appealing to a Regional Director or the General Counsel, plaintiff could not have exhausted his administrative remedies. Furthermore, Lambright's email that plaintiff says confused him was sent months after the deadlines expired for filing the available grievance appeals. Accordingly, the defendants are entitled to summary judgment because plaintiff did not properly exhaust available administrative remedies.

C.  EVEN IF PLAINTIFF DID EXHAUST ADMINISTRATIVE REMEDIES, DEFENDANTS WOULD BE ENTITLED TO QUALIFIED IMMUNITY.

Plaintiff names the defendants in their personal capacities, and the defendants assert the defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)).

Qualified immunity is an immunity from suit rather than a mere defense to liability. A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). "The unlawfulness of the action must be apparent

7

when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment for insufficient medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). The prisoner must show that a defendant's action was "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. Non-medical prison employees can be found to have acted with deliberate indifference if they intentionally delay or deny an inmate access to medical care or intentionally interfere with the prescribed treatment. Estelle, 429 U.S. 104-05.

However, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Id. at 105-06. See Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986); Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must

actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83.

Plaintiff fails to show that a defendant's conduct exhibited deliberate indifference. Soon after plaintiff woke up with extreme genital pain, he was at the medical department being seen by the nurse practitioner. The nurse practitioner believed plaintiff had a testicle in torsion, and Dr. Payne diagnosed plaintiff with epididymitis after she examined him. In light of the disagreement of diagnosis, Lambright and Payne referred plaintiff to the hospital by 2:30 p.m., and plaintiff left USP Lee by 2:47 p.m.

Although plaintiff notes in his Complaint that he was placed in a cell for two hours before his transportation to the hospital, he fails to identify any act or decision by either Lambright or Dr. Payne that either placed him in that cell or continued his placement beyond what he believes was necessary. Even if plaintiff's response to the motion for summary judgment could amend his Complaint, he merely concludes that Dr. Payne "purposefully and with malice delayed treatment" between when Dr. Payne and the nurse practitioner diagnosed him and when he left USP Lee. Moreover, plaintiff fails to correlate to the defendants any delay during his transportation between USP Lee and the hospital.

Plaintiff fails to state a claim of deliberate indifference against Dr. Payne. It is well settled that disputes as to medical diagnoses are not a basis for deliberate indifference. Plaintiff's arguments that a layman can distinguish between a testicle in torsion and epididymitis is not realistic; the diagnosis requires medical training, expertise, and equipment. Indeed, the dispute between the medical staff's diagnoses was resolved using an ultrasound, a sophisticated medical tool that shows physical details hidden from normal observation.

Based on the allegations described in the Complaint, Lambright is entitled to qualified immunity, and plaintiff presently fails to state an Eighth Amendment claim upon which relief may be granted against Dr. Payne. In light of plaintiff's adamant arguments that he seeks relief via <u>Bivens</u> and not the FTCA, I decline to construe the Complaint as alleging an FTCA claim.

III.

For the foregoing reasons, I grant Lambright's motion for summary judgment and dismiss without prejudice claims against Dr. Payne, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for the defendants.

**ENTER**: This 14th day of September, 2011.

*[signature]*
Senior United States District Judge